## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

**NICHOLAS SCHAFER,**

      **Plaintiff,**                  **CIVIL ACTION NO. 3:25-CV-3566-X**

**v.**

**CLOUDBEES, INC.**

      **Defendant.**

---

### PLAINTIFF'S RESPONSE TO DEFENDANT CLOUDBEES, INC.'S
### MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND,
### IN THE ALTERNATIVE REQUEST TO AMEND

Plaintiff, Nicholas Schafer ("Schafer"), by and through its undersigned counsel, submits this Response to Defendant CloudBees, Inc.'s ("CloudBees") Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) and, in the Alternative Request to Amend, and respectfully states:

### Preliminary Statement and Background

Within twenty-one days of service of Defendant's Rule 12(b)(6) motion, Plaintiff filed a First Amended Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). Because Defendant's Motion is directed to a superseded pleading, it should be denied as moot or, at minimum, denied without prejudice. Plaintiff nevertheless addresses Defendant's arguments below and explains why dismissal with prejudice is unwarranted.

This case arises from an employment relationship between Schafer and CloudBees. In July 2023, CloudBees extended Schafer a written offer of employment as an Account Executive, which he accepted. Schafer's compensation was governed by a written offer

1

letter and CloudBees' FY24 Sales Incentive Compensation Policy (collectively, the "Agreements"), which addressed his base salary, non-recoverable draw, and eligibility for commission and other incentive compensation. Schafer's employment ended in February 2024, after which a dispute arose regarding CloudBees' failure to pay compensation Schafer earned under the Agreements.

Schafer filed suit in Texas state court asserting claims arising from CloudBees' alleged contractual breaches and related conduct. CloudBees removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, asserting diversity jurisdiction, and subsequently filed the pending Motion to Dismiss, attaching the Agreements it contends govern the parties' dispute. *See* Notice of Removal, ECF No. 1. Plaintiff now responds.

## ARGUMENT

### I. Legal Standard

To survive a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). A Rule 12(b)(6) motion tests the legal sufficiency of the pleadings, not the strength of the plaintiff's case. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

[This page intentionally left short.]

2

## II.    Plaintiff States a Claim for Breach of Contract (Count I)

Defendant argues the breach of contract claim (Count I) fails because Schafer allegedly failed to identify or cite specific provisions of the Offer Letter or FY24 Sales Incentive Compensation Policy that CloudBees breached, and therefore, purportedly failed to plead breach with sufficient specificity. *See* Def.'s Br. at 5, ECF No. 7. At the pleading stage, Schafer is not required to identify or quote specific contractual provisions to survive dismissal. Rule 8 requires only that the complaint provide fair notice of the claim and the grounds upon which it rests.

The elements for a breach of contract claim under Texas law are (1) existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from the breach. *Kay v. North Texas Rod & Custom*, 109 S.W.3d 924, 927 (Tex. App.—Dallas 2003, no pet.).

Schafer plausibly alleges each element. First, the existence of valid contracts governing Schafer's compensation,  including the Offer Letter and FY24 Sales Incentive Compensation Policy (the "Agreements"), is not disputed. *See* Def.'s Br. at 4–5, ECF No. 7. Second, Schafer alleges that he performed under the Agreements by accepting employment and discharging his duties as an Account Executive, including successfully closing multiple sales transactions that entitled him to commission compensation. *See* Pet. ¶¶ 15–16, ECF No. 1-1. Third, Schafer alleges that CloudBees breached the Agreements by failing to pay compensation he earned. Specifically, Schafer alleges that CloudBees retroactively reclassified, reduced, or removed three closed deals, including the Dell and 7-Eleven transactions, after the deals were approved, closed, and payment was received, thereby denying Schafer commission and quota credit he had earned. *Id.* ¶¶ 16–30. Schafer further alleges that CloudBees took these actions after he raised concerns

3

about his compensation. *Id.* ¶¶ 29–31. Finally, Schafer alleges resulting damages, including unpaid commissions and other compensation owed under the Agreements. *Id.* ¶¶ 29–31, 66. Accordingly, Schafer's allegations satisfy the Rule 8 standard, and Defendant's motion to dismiss the breach of contract claim should be denied.

### III.    Plaintiff States a Claim for Promissory Estoppel (Mislabeled as Detrimental Reliance) (Count II)

Schafer's Count II is properly understood a mislabeled promissory estoppel claim based on promises made outside the scope of an enforceable contract. As Defendant correctly notes, detrimental reliance is not an independent cause of action under Texas law but is instead an element of promissory estoppel. *See Garcia v. Lucero*, 366 S.W.3d 275, 281–82 (Tex. 2012). Therefore, this Court looks to the substance of the allegations, rather than the label affixed to the claim.

Promissory estoppel applies to promises made outside the scope of an enforceable contract, including pre-contract representations that induce a party to enter an agreement and post-contract, extra-contractual promises concerning how contractual discretion will be exercised. *See Trevino & Assocs. Mech., L.P. v. Frost Nat'l Bank*, 400 S.W.3d 139, 146 (Tex. App.—Dallas 2013, no pet.) ("[P]romissory estoppel will apply to a promise outside a contract."); *Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 656 (Tex. App.—Dallas 2015, no pet.) (promissory estoppel viable where independent promise existed outside contract); *El Paso Healthcare Sys., Ltd. v. Piping Rock Corp.*, 939 S.W.2d 695, 699 (Tex. App.—El Paso 1997, writ denied) (same). Thus, where a contract exists, a plaintiff must allege that the promise on which he relied was independent of, and not subsumed by, the written agreement.

To state a claim for promissory estoppel, a plaintiff must allege a promise, foreseeable reliance, and detrimental reliance. *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). Schafer adequately alleges each element.

First, Schafer alleges the existence of specific promises made both during recruiting and after his employment began, outside the express terms of the written compensation agreements. He alleges that during the recruiting and interview process, CloudBees represented that the non-recoverable draw was a guaranteed form of compensation and failed to disclose that accepting a six-month draw structure would extend a clawback period that would materially reduce his commissions. *See* Pet. ¶¶ 9–11, ECF No. 1-1. He further alleges that CloudBees represented that his onboarding plan would include shared credit and commissions on the 7-Eleven deal, which was expected to close early in his tenure. *Id.* ¶ 12. In addition, Schafer alleges that after he began employment, CloudBees' management and sales operations repeatedly represented that specific deals he worked on, including the Dell and 7-Eleven transactions, would be treated as "new business" and credited accordingly. *Id.* ¶¶ 19–20, 24–29. These alleged promises concern the application of compensation rules and the exercise of managerial discretion and are not limited to the express terms of the written agreements.

Second, Schafer plausibly alleges that reliance on these promises was foreseeable. According to the Petition, the representations were made by CloudBees' hiring manager and other decisionmakers for the purpose of inducing Schafer to accept employment under a non-standard compensation structure and to continue performing under that structure. *See* Pet. ¶¶ 10–13, 19–20, 24–25, ECF No. 1-1. Thus, it was foreseeable that Schafer would rely on those representations both in accepting CloudBees' offer of employment and in continuing to work and close deals.

5

Third, Schafer alleges substantial reliance to his detriment. He alleges that he accepted CloudBees' offer and agreed to a non-standard six-month draw structure based on the representations made during recruiting and that he continued to devote substantial time and effort to closing major deals based on assurances regarding how those deals would be credited and paid. *See* Pet. ¶¶ 10–11, 16, 24–26, ECF No. 1-1. He further alleges that CloudBees ultimately reclassified or removed those deals and denied him commission and quota credit after the deals were closed and revenue was received, resulting in significant financial loss. *Id.* ¶¶ 26–31, 44. These allegations sufficiently plead detrimental reliance at the Rule 12(b)(6) stage.

In sum, Schafer pleads promissory estoppel in the alternative to his breach of contract claim, which is expressly permitted under Texas law where the scope or enforceability of the written agreements is disputed. Viewed in the light most favorable to Plaintiff, Count II states a plausible claim for promissory estoppel, and the Motion to Dismiss must be denied.

## IV.    Plaintiff States a Claim for Fraudulent Inducement (Count III)

Schafer alleges that CloudBees intentionally misrepresented or knowingly failed to disclose material facts about how his compensation would work in order to induce him to accept employment under a non-standard compensation structure that disproportionately benefited CloudBees and deprived Schafer of commissions he reasonably expected to earn. CloudBees moves to dismiss Count III on the ground that Schafer allegedly fails to plead fraudulent inducement with the particularity required by Rule 9(b) and fails to allege a material misrepresentation or actionable omission independent of the parties' written agreements.

6

Under Texas law, fraudulent inducement is a species of common-law fraud and requires proof of the same elements: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America, Inc.*, 341 S.W.3d 323, 337 (Tex. 2011) (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam)). Because fraudulent inducement concerns misrepresentations made to procure an agreement, "the elements of fraud must be established as they relate to an agreement between the parties." *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57 (Tex. 2015) (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001)). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir.2005).

a.     **The "Who, What, When, and Where" of the Alleged Fraud:** Schafer alleges that CloudBees, acting through his hiring manager, made the misrepresentations and omissions at issue during the recruiting and interview process, prior to Schafer's acceptance of the employment offer. *See* Pet. ¶¶ 7–14, ECF No. 1-1. These representations were made in the context of employment negotiations concerning Schafer's compensation structure and onboarding plan. The alleged misrepresentations include statements that:  the non-recoverable draw functioned as a guaranteed form of compensation; and the six-month draw structure was in Schafer's best interests and

7

posed no material downside. *Id.* ¶¶ 10–11. Schafer further alleges that CloudBees failed to disclose a material fact, primarily, that accepting the six-month draw structure would extend the clawback period, thereby materially reducing or eliminating commissions on early deals, including those anticipated as part of Schafer's onboarding. *Id.* ¶¶ 10–14.

    **b.**    **The "How" and Scienter:** Schafer alleges that these representations were false or misleading when made because CloudBees knew how the draw and clawback structure operated in practice and knew that the non-standard structure would materially impair Schafer's ability to earn commissions on early deals. *See* Pet. ¶¶ 10–14, ECF No. 1-1. He further alleges that CloudBees affirmatively characterized the structure as beneficial and guaranteed while withholding material information necessary for Schafer to understand its true effect. *Id.* At the pleading stage, these allegations support a plausible inference that CloudBees either knew the representations were false or made them recklessly without regard to their truth.

    **c.**    **Intent, Reliance, and Injury:** The Petition alleges that the misrepresentations were made for the purpose of inducing Schafer to accept employment under the non-standard compensation structure. *See* Pet. ¶¶ 7–14, ECF No. 1-1. Schafer alleges that he relied on those representations by accepting the offer and agreeing to the six-month draw arrangement. *Id.* ¶¶ 10–11, 15. He further alleges that he would not have accepted those terms had CloudBees disclosed how the draw and clawback would operate in practice. *Id.* ¶¶ 13–14. Finally, Schafer alleges that as a direct result of his reliance, he suffered financial injury, including the loss of commissions and compensation he reasonably expected to earn. *Id.* ¶¶ 26–31, 44, 49.

    Taken together, Schafer's allegations identify who made the misrepresentations (his hiring manager acting for CloudBees), what was misrepresented or concealed (the

8

nature and effect of the draw and clawback structure and onboarding commissions), when and where the misrepresentations occurred (during the recruiting and interview process), and how the misrepresentations induced him to enter the employment agreement to his detriment. This is sufficient to satisfy Rule 9(b) at the pleading stage.

While Defendant disputes Schafer's version of events and the ultimate merits of his claim, those disputes are not properly resolved on a Rule 12(b)(6) motion. Viewed in the light most favorable to Plaintiff, Count III states a plausible claim for fraudulent inducement and should not be dismissed.

## V.    Plaintiff Withdraws his Claims for Conversion or Theft

Plaintiff does not seek to pursue separate claims for conversion or theft based on the alleged nonpayment of commissions governed by the parties' written agreements. Plaintiff will therefore voluntarily withdraw Counts IV and V and proceed on his contractual and related common law claims.

## VI.    Plaintiff Withdraws his Claims for Wrongful Termination and Constructive Discharge and Will Clarify his Breach of Contract Claim (Count I)

Plaintiff does not seek to pursue free-standing claims for wrongful termination or constructive termination as alleged in Counts VI and VII, respectively. Therefore, Plaintiff will voluntarily withdraw Counts VI and VII and amend his complaint to clarify that his claims sound in breach of contract based on Defendant's alleged failure to pay compensation owed under the governing agreements, including compensation due upon termination of employment for any reason. *See Utility Construction Services, LLC v. Walters*, Civil Action No. 3:25-CV-1190-B, 2025 WL 3751702, at *6–7 (N.D. Tex. Dec. 29, 2025) (recognizing that constructive discharge is not a standalone claim but may function

as a theory supporting a breach of contract claim where termination triggers contractual payment obligations).

## VII.  Alternative Request for Leave to Amend

Federal Rule of Civil Procedure 15(a) governs amendment of pleadings. A motion to dismiss is not a "responsive pleading" within the meaning of Rule 15(a). On January 27, 2026, within twenty-one days of service of Defendant's Rule 12(b)(6) motion, Plaintiff filed his First Amended Complaint as a matter of course pursuant to Rule 15(a)(1)(B). Even if leave were required, Rule 15 directs that leave to amend should be "freely give[n] when justice so requires." FED. R. CIV. P. 15(a)(2). The Fifth Circuit has repeatedly emphasized that this mandate should be heeded absent undue delay, bad faith, prejudice, or futility. *See Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. Co.*, 195 F.3d 765, 770 (5th Cir. 1999).

None of those factors is present here. This case remains at its earliest stage. No discovery has occurred. The Court has not yet entered its scheduling order or otherwise set a deadline for amendment of the pleadings. Defendant will suffer no prejudice from amendment. To the extent the Court concludes that Plaintiff's allegations require additional factual specificity, amendment is the appropriate remedy, not dismissal with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied. Plaintiff has adequately stated claims for breach of contract, promissory estoppel, and fraudulent inducement. To the extent any claims are withdrawn or require clarification, Plaintiff has addressed those issues and, in any event, amendment is the appropriate remedy, not dismissal with prejudice.

10

Dated: January 26, 2026.

Respectfully submitted,

BRUCE C. KAYE, PLLC

/s/ Bruce C. Kaye
Bruce C. Kaye
State Bar No. 00784374
Heritage One
4835 LBJ Expressway, Suite 470
Dallas, Texas 75201
Phone: (214) 722-7438
Email: bruce@brucekaye.com

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2026, the foregoing Plaintiff's Response to Defendant CloudBees, Inc.'s Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) and, in the Alternative, Request to Amend His Complaint was filed electronically through the Court's CM/ECF system, which will serve notice of such filing on all counsel of record.

/s/ Bruce C. Kaye
Bruce C. Kaye

11